**UNITED STATES DISTRICT COURT**
**For The DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN GARD,<br>5045 Rushlight Path<br>Columbia, Maryland 21004-1295,<br><br>        Plaintiff<br><br>    v.<br><br>UNITED STATES DEPARTMENT<br>of EDUCATION<br><br>       Defendant<br>   and<br><br>MARGARET SPELLING, SECRETARY,<br>UNITED STATES DEPARTMENT<br>   OF EDUCATION<br>400 Maryland Avenue, S.W.<br>Washington, D.C. 20202<br><br>       Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   **Civil Action No. 1:07-cv-02303 (RMC)** |

Motion to Compel the Defendants to Answer the Revised Amended Complaint
and
Motion for Sanctions Due to Defendants' Violation of the Court's Order Dated April 2, 2008

Plaintiff, *Pro se*, hereby requests the Court to Order the Defendants to immediately file the

Defendants' answer to the Revised Amended Complaint and sanction the Defendants for violating

the Court's Order dated April 2, 2008.

1.  In March 2008, the Defendants requested Plaintiff, pro se, file a Revised Amended Complaint

    in lieu of the Defendants answering the original complaint filed December 21, 2007.

2.  On April 2, 2008, the Court authorized Plaintiff, pro se, to file a Revised Amended Complaint.

3.  Plaintiff, pro se, timely filed the Revised Amended Complaint with the Court on April 18, 2008.

4.  A copy of the Revised Amended Complaint was timely served on the Defendants on April 18 2008, by FedEx and USPS.[1]

5.  The Revised Amended Complaint was filed with the Court and served on the Defendants as follows:[2]

    A.  Hand delivered on April 18, 2008, to the Clerk's Office, Clerk of the Court, United States District Court for the District of Columbia, 333 Constitution Ave., N.W.,Washington, D.C. 20001.

    B.  Placed with FedEx, tracking # 8652 3493 1018, on April 18, 2008, for service on Mr. OLIVER W. McDANIEL, D.C. BAR # 377360, Assistant United States Attorney, Civil Division, 555 Fourth Street, N.W., Washington, D.C.  20530.  It was received April 22, 2008.

    C.  Placed with USPS, delivery confirmation # 0308 0070 0001 7854 5110, on April 18, 2008, for service on the United States Attorney's Office, 555 4th Street, N.W., Washington, D.C. 20530.  It was received April 21, 2008.

    D.  Placed with USPS, delivery confirmation # 0308 0070 0001 7854 5103, on April 18, 2008, for service on the Attorney General of the United States, 950 Independence Ave., N.W., Washington, D.C. 20530. It was received April 21, 2008.

    E.  Placed with USPS, delivery confirmation # 0308 0070 0001 7854 5134,  on April 18,

---

[1]  The summons were not served on the Defendants with the Revised Amended Complaint as the person at the counter in the Clerk's office said the summons were not needed.

[2]  A copy of the FedEx and USPS proof of service documentation was submitted to the Court and Defendants on or about May 19, 2008.

2008, for service on Mr. William Haubert, Office of the General Counsel, United States Department of Education, 400 Maryland Avenue, S.W., Room 6C106, Washington, D.C. 20202. It was received April 21, 2008.

F.   Placed with USPS, delivery confirmation # 0308 0070 0001 7854 5127,  on April 18, 2008, for service on Ms. Margaret Spelling, Secretary, United States Department of Education, 400 Maryland Avenue, S.W., Washington, D.C. 20202. It was received April 24, 2008.

6.   On April 2, 2008, the Court instructed the Defendants to file a prompt answer to the Revised Amended Complaint.

7.   "Promptly" is legally defined as:

> "Adverbial form of the work 'prompt,' which means ready and quick to act as occasion demands. The meaning of the word depends largely on the facts in each case, for what is 'prompt' in one situation may not be considered such under other circumstances or conditions. To do something 'promptly' is to do it without delay and with reasonable speed. Application of Beattle, 4 Storey 506, 180 A.2d 741, 744." *Blacks Law Dictionary*, Fifth Edition @ p. 1093.

8.   The Defendants have had sufficient time to answer the Revised Amended Complaint.[3]

9.   Plaintiff contacted the Defendants' counsel of record Mr. OLIVER W. McDANIEL, D.C. BAR # 377360, Assistant United States Attorney, by email dated May 5, 2008. Plaintiff's email stated, "The Revised Amended Complaint was timely filed April 18, 2008. I would like a response stating the date the Defendants' response will be filed." As of May 28, 2008, the Defendants have not responded to Plaintiff's email.

10.  The validity of the factual statements set forth in the Revised Amended Complaint were

---

[3] Approximately 40 days by the time the Court has received this motion.

Page 3 of  9

subscribed and sworn to by Plaintiff, pro se. *Revised Amended Complaint* @ p. 228.

11. Plaintiff, pro se, also declared under the penalty of perjury under the laws of the United States of America that the statements set forth in the Revised Amended Complaint were true and correct. *Ibid* @ p. 228.

12. Plaintiff filed a "Notarized" declared and verified Revised Amended Complaint. *Ibid* @ pp. 228 - 229.

13. Written documentation supports, i.e., proves, most and possibly all of the Revised Amended Complaint's factual paragraphs and statements.

14. The Defendants have a copy of the written documentation that supports, i.e., proves, most and possibly all of the Revised Amended Complaint's factual paragraphs and statements.

15. Federal litigation rules and attorney ethics requires the Defendants to admit the factual paragraphs and statements set forth in the Revised Amended Complaint or commit perjury because Plaintiff voluntarily provided the Defendants with a copy of the written documentation that supports, i.e., proves, most and possibly all of the Revised Amended Complaint's factual paragraphs and statements.

16. Commencing in April 2002 and henceforth the Defendants have continuously refused to admit non-disputable facts involving Plaintiff and the Defendants.

17. Commencing in May 2002 the Defendants chose to settle the first whistleblower reprisal complaint Plaintiff filed against the Defendants rather than admit non-disputable facts.

18. The Defendants have not answered the factual paragraphs and statements set forth in the Revised Amended Complaint because the Defendants have refused to admit non-disputable facts involving Plaintiff and the Defendants commencing in April 2002 and henceforth.

19. The Defendants have not answered the factual paragraphs and statements set forth in the Revised Amended Complaint because the Court cannot issue a default judgement against a federal agency.

20. The Defendants have not answered the factual paragraphs and statements set forth in the Revised Amended Complaint to stall/prolong this litigation and thereby deny Plaintiff his due process rights.

21. The Defendants have not answered the factual paragraphs and statements set forth in the Revised Amended Complaint to deny the Court the ability/opportunity to issue a judgement against the Defendants.

22. The Defendants have not answered the factual paragraphs and statements set forth in the Revised Amended Complaint to deny Plaintiff the ability/opportunity to file a motion for summary judgement and thereby conclude all of the litigation involving the Plaintiff and Defendants.

23. The Defendants have not answered the factual paragraphs and statements set forth in the Revised Amended Complaint because the Defendants know the Clerk's office and the District Court will be unhappy if Plaintiff attempted to file a motion for summary judgement supported by approximately two to six thousand pages distributed through four to five hundred exhibits.[4]

24. The Defendants have again filed a motion to expand discovery in Civil Action No. 00-1096 (PLF) (DAR) because discovery in this proceeding cannot proceed until after the Defendants'

---

[4] The Clerk's office reluctantly accepted the few exhibits Plaintiff filed with the original complaint. Plaintiff would probably be unwelcome if he attempted to file the documentation supporting a motion for summary judgement.

answer has been filed per the Court's order dated April 2, 2008.

25. Plaintiff's May 26, 2008, response in Civil Action No. 00-1096 (PLF) (DAR) to the Defendants' motion to expand discovery is incorporated herein by reference as the Defendants' motion and Plaintiff's response are on file with the Court pursuant to Civil Action No. 00-1096 (PLF) (DAR).

26. The Defendants' May 2008 motion to expand discovery in Civil Action No. 00-1096 (PLF) (DAR) to pursue discovery in this litigation is unethical as it violates the Court's order dated April 2, 2008.

27. There is no legal reason to expand discovery in Civil Action No. 00-1096 (PLF) (DAR).

28. At this time, there is no legal reason to pursue discovery in this litigation.

29. The issues related to this litigation have been discovered and rediscovered multiple times.

30. Plaintiff promptly answered the Defendants' discovery requests.

31. Defendants' actions prove the Defendants will not comply with judicial orders and/or litigation rules pursuant to litigation involving this Plaintiff.

    A.   The Defendants have refused to comply with multiple EEOC orders and regulations.

    B.   Defendants refused to answer Plaintiff's EEOC discovery requests for ED-2005-28-00.

    C.   Defendants denied Plaintiff his right to an EEOC hearing by refusing to forward the Report of Investigation for ED-2005-28-00 to the EEOC.

    D.   Defendants refused to comply with the MSPB order and regulations in MSPB Docket Numbers DC-1221-06-0764-W-2 and DC-1221-05-0518-W-4.

    E.   Defendants refused to comply with this Court's order dated April 2, 2008, which instructed the Defendants to promptly file the Defendants' answer to the Revised Amended

Complaint.

32. Plaintiff's August 4, 2006, response to the Defendants' EEO Interrogatories dated July 3, 2006,

is attached hereto as exhibit 1 and incorporated herein by reference as if fully stated herein as

that allows the Court various pleading and supporting evidence decision options. However, the

documents referenced in and supporting Plaintiff's August 4, 2006, discovery response have

been removed from exhibit # 1 and are not submitted to the Court at this time as Plaintiff would

prefer not to antagonize the Court.

WHEREFORE, Plaintiff respectfully requests the Court to order the Defendants to immediately:

a) file the Defendants' answer to the Revised Amended Complaint, b) cease any further attempts to

pursue discovery related to Civil Action No. 07-2303 (RMC) through Civil Action No. 00-1096

(PLF) (DAR), and c) show cause as to why this Court should not hold the Defendants and

Defendants' counsel in contempt of court for refusing to promptly file the Defendants' answer to

the Revised Amended Complaint and attempting to pursue discovery related to Civil Action No.

07-2303 (RMC) through Civil Action No. 00-1096 (PLF) (DAR).

**Plaintiff's Notarized Declaration and Verification statement and signature is on the next page.**
SUBSCRIBE AND SWORN TO:

Respectfully submitted,

_____May 29, 2008_____          _____
Date                                        John Gard, Pro se
                                            5045 Rush Light Path
                                            Columbia, MD 21044-1295
                                            (H) 410-715-0244     (W) 202-377-3830

**DECLARATION.**

I, John Gard, do hereby declare under the penalty of perjury under the laws of the United States of America that the statements above are true and correct.

**VERIFICATION.**

The undersigned, being first duly sworn, deposes and states that I, John F. Gard, Plaintiff in this complaint, has read the above and foregoing, and the statements made therein are true and correct to the best of my knowledge, information and belief.

_____May 29, 2008_____
Date

John Gard, Pro se
5045 Rush Light Path
Columbia, MD 21044-1295
(H) 410-715-0244     (W) 202-377-3830

STATE OF MARYLAND        )
                         ) ss.
COUNTY OF HOWARD         )

Subscribed and sworn to before me on this _29th_ day of _May_____, 2008.

Witness my hand and official seal.

My commission expires: _Sept 14 2009_____

_____                ERIC T. BROOKS, JR.
Notary Public                    NOTARY PUBLIC STATE OF MARYLAND
                                 My Commission Expires 09/14/2009

Plaintiff File ref:    2008-05-29 Motion to Compel Answer.wpd

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the date specified below a true and correct copy of the above and foregoing document entitled "Motion to Compel the Defendants to Answer the Revised Amended Complaint and Motion for Sanctions Due to Defendants' Violation of the Court's Order Dated April 2, 2008" including the exhibits, if any, as specified therein was filed with and sent to the offices and individuals as specified below by facsimile, FedEx or USPS to:

Clerk's Office, Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Ave., N.W.
Washington, D.C.  20001

OLIVER W. McDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
(V) (202) 616-0739   (F)  202.514.8780

_____May 29, 2008_____
Date

John Gard, Pro se
5045 Rush Light Path
Columbia, MD 21044-1295
(H) 410-715-0244      (W) 202-377-3830

Plaintiff's File ref:      2008-05-29 Motion to Compel Answer.wpd

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office - 570

| | |
|---|---|
| John Gard,<br>    Complainant,<br><br>      v.<br><br>Margaret Spellings,<br>Secretary,<br>U.S. Department of Education,<br>    Agency. | ) EEOC No.: 570-2006-00125X<br>) Agency No.: ED-2005-28-00<br>)<br>)<br>)<br>)   *07-2303 (RMC)*<br>)<br>)<br>)<br>)<br>) Date:      July 5, 2006 |

### COMPLAINANT'S RESPONSE

### TO THE AGENCY'S INTERROGATORIES DATED JULY 3, 2006

1.   **Please identify any and all individual(s) who prepared or assisted in the preparation of your answers to these Interrogatories, specifying, as to each such individual, the Interrogatory(ies) on which s/he assisted.**

John Gard prepared the response to these interrogatories and framed all of the answers. Aylene Kovensky-Gard edited John Gard's response and entered exhibit data onto the database. John Gard discussed in general terms with Jim Mundt, Esquire, on to how to respond to an admission, i.e., deny the admission it if any part of it is false.

2.   **Please identify each person who, to your knowledge or belief, has personal knowledge of facts or evidence relevant to your allegations of discrimination in this complaint, providing for each such individual a complete and accurate description of the knowledge you believe that they have or may have, and stating the person's relationship to you, if any.**

*Exhibit 1*

a.    Danny Harris is an agency employee and potential adversarial witness for the complainant.

Mr. Harris was involved in: having the complainant removed from the agency in June 1998 because complainant's gross mismanagement and fraud disclosures delayed the implementation of GAPS; the October through December 1998 return of the complainant to the workplace, medical and reasonable accommodation discussions; the agency's illegal attempt to obtain complainant's medical records; the agency's discontinuance of the agency's illegal attempt to obtain complainant's medical records when informed the agency's request for complainant's medical records would have to be justified in a court; and creating a position for the complainant in the Financial Improvement and Post Audit Operations, Office of the Chief Financial Officer, in December 1998 in accordance with and pursuant to the handicap reasonable accommodation requirements of the Rehabilitation Act of 1973, as amended.  Mr. Harris was duly authorized by senior agency officials to officially represent the agency as the senior agency official when he met with the complainant during the October through December 1998 return the complainant to the workplace, medical and reasonable accommodation discussions.  It is believed Mr. Harris was involved in, but not limited to, ending the complainant's detail assignment to the Indirect Cost Group on September 30, 2004; having work assignments removed from the complainant in October 2004; the decision in November 2004 to commence the discontinuance of the reasonable accommodation agency officials, e.g., Messrs. Harris and Maestri, had previously authorized and provided the complainant; ordering complainant's supervisors not to assign the complainant work from October 2004 through April 4, 2005; and the agency's March 2006 refusal to forward the Report of Investigation completed in agency number ED-2005-28-00 to the EEOC as required by federal statute.

Mr. Harris is the last known person to have possession of the agency's file(s) pertaining to the complainant which the agency has stated is lost (destroyed).

b. Phil Maestri is an agency employee and potential adversarial witness for the complainant.

Mr. Maestri was involved in: the October through December 1998 return of the complainant to the workplace, medical and reasonable accommodation discussions; the agency's illegal attempt to obtain complainant's medical records; the agency's discontinuance of the agency's illegal attempt to obtain complainant's medical records when informed the agency's request for complainant's medical records would have to be justified in a court; and creating a position for the complainant in the Financial Improvement and Post Audit Operations, Office of the Chief Financial Officer, in December 1998 in accordance with and pursuant to the handicap reasonable accommodation requirements of the Rehabilitation Act of 1973, as amended. Mr. Maestri was duly authorized by senior agency officials to officially represent the agency as second senior agency official when he met with the complainant during the October through December 1998 return the complainant to the workplace, medical and reasonable accommodation discussions. Mr. Maestri, complainant's supervisor, approved the Flexiplace agreement dated February 10, 2000, and the handicap reasonable accommodation contained therein after receiving authorization from senior agency officials to authorize the same.

c. Joanna Dailey is an agency employee and potential adversarial witness for the complainant.

Ms. Dailey stated during a MSPB compliance petition settlement conference in January or February 2005 and informed the MSPB Administrative Judge that the complainant had criminally

violated federal statutes and agency regulations which the complainant perceived to be and continues to perceive to be a direct threat to the continuation of the complainant's federal employment. Ms. Dailey's criminal allegation was made because the complainant had disclosed external, and apparently internal, grantee fraud to the legal authorities, and had filed a MSPB compliance complaint and an EEOC handicap discrimination refusal to continue reasonable accommodation complaint against the agency. Ms. Dailey has continuously refused to substantiate her allegation that the complainant had criminally violated federal statutes and agency regulations. It is believed Ms. Dailey was involved in, but not limited to, ending the complainant's detail assignment to the Indirect Cost Group on September 30, 2004; having work assignments removed from the complainant in October 2004; the agency decision in November 2004 to commence the discontinuance of the reasonable accommodation agency officials, e.g., Messrs. Harris and Maestri, had previously authorized and provided the complainant; ordering complainant's supervisors not to assign the complainant work from October 2004 through April 4, 2005; and the agency's March 2006 refusal to forward the Report of Investigation completed in agency number ED-2005-28-00 to the EEOC as required by federal statute.

Ms. Dailey authorized Mr. Mueller to inform the complainant that he could not disclose fraud to the legal authorities and imply that the complainant would be in violation of the terms of the settlement agreement if he continued to disclose fraud because the complainant had signed away his right to disclose fraud when he accepted the settlement agreement. The complainant's copy of the settlement agreement does not contain any clause that states or implies the complainant had signed away his right to disclose fraud. The complainant would not ever agree to do such an unthinkable act as that would mean the complainant had accepted a bribe from and went to bed with the criminals

and sold his soul to the devil which the complainant will not ever do! None of the litigation that exists between the agency and the complainant would exist if agency officials and employees would also comply with the law.

      d.     Debbie Friendly is an agency employee and potential adversarial witness for the complainant.

Ms. Friendly is the agency representative in the Privacy Act litigation and was involved in the privacy act settlement discussions, medical and reasonable accommodation discussions, the agency's illegal attempt to obtain complainant's medical records, the fact that the complainant had signed the agency's medical release form, the fact that complainant's attorney withdrew the agency's medial release form the complainant had signed when complainant's attorney learned the agency's intended use of complainant's medical records was for an illegal purpose, the agency's discontinuance of the agency's illegal attempt to obtain complainant's medical records when informed the agency's request for complainant's medical records would have to be justified in a court, and a direct illegal request to Dr. Zavadil, complainant's physician, to obtain complainant's medical records.

      e.     William Haubert is an agency employee and potential adversarial witness for the complainant.

The agency released documented proof that Mr. Haubert either failed to take an act required or took an act not authorized by federal statute as Mr. Haubert was involved in having the complainant removed from the agency in June 1998 and placed on administrative leave because complainant's disclosures had delayed the implementation of GAPS. The reader is referred to the exhibit entitled "Bribery" for further information concerning the taking of a not authorized act or the not taking of a required act by federal employees.

It is believed Mr. Haubert was or should have been involved in the October through December 1998 return of the complainant to the workplace, medical and reasonable accommodation discussions; the agency's illegal attempt to obtain complainant's medical records; the agency's discontinuance of the agency's illegal attempt to obtain complainant's medical records when informed the agency's request for complainant's medical records would have to be justified in a court; and creating a position for the complainant in the Financial Improvement and Post Audit Operations, Office of the Chief Financial Officer, in December 1998 in accordance with and pursuant to the handicap reasonable accommodation requirements of the Rehabilitation Act of 1973, as amended. Agency attorneys, e.g., Ms. Haubert, and officials were reviewing and approving the offers and actions of Mr. Harris during the October through December 1998 return to work discussions.

Mr. Haubert is and was the supervisor of Ms. Friendly at all times relevant herein. Therefore, Mr. Haubert has, or should have, direct knowledge of the privacy act settlement discussions, medical and reasonable accommodation discussions, the agency's illegal attempt to obtain complainant's medical records, the fact that the complainant had signed the agency's medical release form, the fact that complainant's attorney withdrew the agency's medial release form the complainant had signed when complainant's attorney learned the agency's intended use of complainant's medical records was for an illegal purpose, the agency's discontinuance of the agency's illegal attempt to obtain complainant's medical records when informed the agency's request for complainant's medical records would have to be justified in a court, and a direct illegal request to Dr. Zavadil, complainant's physician, to obtain complainant's medical records.

Mr. Haubert is and was the supervisor of Ms. Dailey at all times relevant herein. Therefore, Mr. Haubert has, or should have, direct knowledge of the criminal allegation Ms. Dailey made during

an MSPB settlement conference in January or February 2005 that the complainant had criminally violated federal statutes and agency regulations which the complainant perceived to be and continues to perceive to be a direct threat to the continuation of the complainant's federal employment. Ms. Dailey's criminal allegation was made because the complainant had disclosed external, and apparently internal, grantee fraud to the legal authorities, and had filed a MSPB compliance complaint and an EEOC handicap discrimination refusal to continue reasonable accommodation complaint against the agency. Ms. Dailey has continuously refused to substantiate her allegation that the complainant had criminally violated federal statutes and agency regulations. Furthermore, Mr. Haubert has, or should have, direct knowledge of the agency decisions and actions concerning the ending of the complainant's detail assignment to the Indirect Cost Group on September 30, 2004; having work assignments removed from the complainant in October 2004; the agency decision in November 2004 to commence the discontinuance of the reasonable accommodation agency officials, e.g., Messrs. Harris and Maestri, had previously authorized and provided the complainant; ordering complainant's supervisors not to assign the complainant work from October 2004 through April 4, 2005; and the agency's March 2006 refusal to forward the Report of Investigation completed in agency number ED-2005-28-00 to the EEOC as required by federal statute.

      f.      Richard Mueller is an agency employee and potential adversarial witness for the complainant.

Mr. Mueller's belief that the complainant had signed a last chance settlement agreement, had signed away his appeal rights, and had agreed not to disclose fraud to the legal authorities came from Ms. Dailey, the agency's legal representative concerning the MSPB settlement agreement.

Mr. Mueller told the complainant that the November 2004 authorization to discontinue complainant's reasonable accommodation came from Ms. Dailey.

Mr. Mueller removed grantee indirect cost rate proposal work assignments from the complainant in October 2004.

Mr. Mueller was the Acting Director, FIPAO, from October 2004 through January or February 2005. Mr. Mueller and Mr. Miller disagree on the date as to when Mr. Miller became the Acting Director, FIPAO. Mr. Mueller did not assign the complainant work from October 2004 through January or February 2005.

Mr. Mueller informed the complainant he was not authorized to work at home and refused to allow the complainant to work at home in November and December 2004 and possibly other dates. The work time the agency authorized the complainant for responding to the agency's discovery requests does not allow the complainant to submit a more detailed and/or exact response.

     g.     Chuck Miller is an agency employee and potential adversarial witness for the complainant.

Mr. Miller was appointed the Acting Director, FIPAO, effective sometime in January, February or March 2005. The effective date and month of Mr. Miller's Acting Director appointment can not be stated with certainty because the interrogatory responses of Messrs. Mueller and Miller contradict each other. Their interrogatory responses are included in the Report of Investigation applicable to agency number ED-2005-28-00.

Mr. Miller did not assign the complainant work from the effective date of his appointment as Acting Director, i.e., January, February or March 2005, through April 3, 2005, even though Mr. Miller was complainant's direct supervisor during that time period.

On April 4, 2005, Mr. Miller assigned the complainant a retaliatory work assignment and has also taken other retaliatory actions against the complainant. Some of the other retaliatory actions include, but are not limited to, withholding supplies from the complainant, assigning an analytical project to the complainant and intentionally withholding from the complainant the data that he had been ordered to analyzed, not allowing the complainant to earn and use credit hours, forcing the complainant to submit a revised Flexiplace and alternate work schedule, etc. The work time the agency authorized the complainant for responding to the agency's discovery requests, i.e., 26 hours of administrative leave, does not allow the complainant to submit a more detailed and/or exact response.

      h.      Linda Stracke is an agency employee and potential adversarial witness for the complainant.

Ms. Stracke knew or should have known before the complainant's position and the complainant were reassigned in August 2005 that the complainant was an otherwise qualified handicap employee entitled to the protections of the Rehabilitation Act of 1973 and had been authorized reasonable accommodation otherwise Mr. Harris failed to perform a duty required by federal statute. However, Ms. Stracke did know the complainant was handicapped before reassigning him, i.e., the complainant sent her an email in early July 2005. Complainant also requested to meet with her but she refused to meet with the complainant until after the complainant had been reassigned.

Since being appointed Director, FIPAO, Ms. Stracke has implemented retaliatory actions against the complainant to include, but are not limited to, refusing to meet with the complainant; reassigning the complainant and complainant's position; work assignments; stating the complainant was not handicapped, had never been authorized reasonable accommodation, had never requested

reasonable accommodation, and had never submitted medical records to the agency; telling the complainant that he had to start the reasonable accommodation process all over if he wanted or was requesting reasonable accommodation to include the submission of complainant's medical records; assigning work and failing to provide the data the work assignment required, denying complainant credit hours, forcing the complainant to submit a new Flexiplace schedule and alternate work schedule, etc., which retaliatory actions are explained in documents in the agency's possession and the Report of Investigation applicable to agency number ED-2005-28-00 and the OSC whistleblower reprisal complainants, and would be explained in the Report of Investigation applicable to agency number ED-2006-11-00 if the agency had investigated this EEO complaint as required by law. The work time the agency authorized the complainant for responding to the agency's discovery requests does not allow the complainant to submit a more detailed and/or exact response.

    i.      Shirley Jackson is an agency employee and potential witness for the complainant.

Ms. Jackson was complainant's supervisor during part of the time from April 1989 through December 1997. Ms. Jackson has knowledge of complainant's narcolepsy; stress; chronic pain in the right shoulder, arm and hand; post-traumatic stress disorder and his treatment thereof; and his requests for reasonable accommodation and the agency's approval thereof.

    j.      Aylene Kovensky-Gard is the complainant's wife and she has submitted an affidavit.

    k.      Dr. Riesett is the complainant's physician and he has submitted an affidavit.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO

interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**3.    Please identify all documents or other tangible evidence that you claim tend to substantiate your allegations of discrimination.**

A preliminary "Litigation Document Index" (Index) has been prepared and is attached hereto. This Index is complete as of the date of the complainant's discovery response: however, the complainant reserves the right to update the Index prior to trial. The complainant can not anticipate what facts the agency will admit nor what documents will be needed at trial as he has not seen the agency's evidence nor has he had sufficient time to review all documents in his possession.

In addition, the 4,000 plus documents the agency produced and sent to the plaintiff pursuant to the plaintiff's Privacy Act discovery requests are not included on the Index as said documents came from the agency. The agency's privacy act discovery response should have, but did not, include a list and summary of the 4,000 plus documents. If the agency wants a listing and summary of those documents, then the agency can provide the complainant with a list and summary of said documents, send said list and summary to the complainant and the complainant will then return a copy of said list and summary to the agency. However, the Index does include some of the 4,000 plus privacy act documents.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO

interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

4.     **Please identify each potential witness, lay or expert, who may testify on your behalf at hearing.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

5.     **For each witness identified in your answer to Interrogatory No.4, specify the issue(s) to which the witness will be testifying, and provide a summary of the testimony you propose to offer through each witness.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

6.    **Please identify and briefly describe each exhibit that will be relied upon by you at hearing.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

7.    **If you contend that any Agency action(s) taken with respect to whether you would be allowed to work at home was the result of discrimination based on disability, please describe the action(s) in detail and state the basis for your contention.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

8.    **Please state whether you were adversely affected by any Agency action(s) described in response to Interrogatory No.7 and, if so, please state in detail how you were adversely affected.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

9.    **If you contend that any Agency action(s) taken with respect to whether you would be allowed to work at home constituted a denial of a reasonable accommodation of a disability, please describe the action(s) in detail and state the basis for your contention.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

10.    **Please state whether you were adversely affected by any Agency action(s) described in response to Interrogatory No.9 and, if so, please state in detail how you were adversely affected.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but

not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**11.      If you claim to have a disability that limits your ability to perform a major life function or functions, as to each such disability, please identify the disability and the function(s) impaired.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**12.      With respect to each disability and impairment identified in your response to Interrogatory No. 11, identify with specificity all documents you furnished to the Agency of said disability and impairment.**

The agency is fully aware that the complainant can not identify all documents because he lost some of the documents; however, the agency is supposed to have and would have a copy of all documents if agency officials, e.g., Danny Harris, had not lost (destroyed) the agency's file(s) pertaining to the complainant. Exhibit No. 366. Please note the agency's failure to properly and

accurately maintain and safeguard the complainant's requests for handicap reasonable accommodation and medical records is a violation of the Rehabilitation Act and the Privacy Act.

Exhibits No. 9 through 25 state and clearly prove that the complainant: a) requested handicap reasonable accommodation; b) submitted to and the agency received the medical documentation requested by agency officials; c) worked with, to include but not be limited to, complainant's supervisors, senior agency officials of the Office of the Chief Financial Officer, and agency officials and employees of the Equal Employment Opportunity Group in providing the requried medical information; and the handicap reasonable accommodation complainant requested was authorized.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**13.    As to each disability identified in your response to Interrogatory No. 11, if it is your contention that you asked the Agency for permission to work at home as an accommodation of said disability, as to each such request, please identify with specificity the accommodation sought and the Agency action taken thereon.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11;

production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**14.    Please identify all documentation of each accommodation request and Agency action identified in your response to Interrogatory No. 13.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**15.    If it is your contention that the Agency revoked any accommodation identified in your response to Interrogatory No. 13, identify with specificity any and all such Agency action(s).**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**16.    Please identify all documentation of each Agency action identified in your response to Interrogatory No. 15.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**17.    As to each Agency action identified in your response to Interrogatory No. 15, state whether such action was temporary or permanent in nature.**

The complainant's medical conditions are not temporary, therefore, the complainant's requests for handicap reasonable accommodation were for permanent and not temporary reasonable accommodation.

Common sense and the wording of complainant's reasonable accommodation request to "work at home on official work time on the case as needed" obviously limited the scope and time period of this reasonable accommodation request and the agency's approval thereof to working on the "Case." The delimiting factor for this reasonable accommodation request is the term "Case."

The term "Case" was an internal agency code word created and defined by agency officials to refer, without limitation, to all litigation involving the agency and complainant. The term "Case" was used by agency officials in their correspondence to refer to all litigation involving the agency and complainant. The complainant became aware of the term "Case" when reviewing the 4,000 plus

privacy act documents that were released to him. The complainant then used the agency's internal code word of "Case" in his correspondence and legal documents. The agency officials' acceptance of the complainant's use of the agency's internal code word "Case" in correspondence and legal documents coincided with, and further established, the agency's definition of the code word "Case" to mean "all litigation involving the agency and complainant." However, in the agency's EEOC discovery requests, the agency has refused to use the internal agency code word "Case." Does that mean agency officials have now defined and created a new internal agency code word to refer to the complainant and all litigation, without limitation, involving the agency and complainant, and would that new code word be "Executive File?"

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**18.    Identify each and every occasion, if any, on which you asked to work at home and the Agency denied such request during the time period from November 22, 2004 to the present.**

Messrs. Mueller and Miller both told the complainant that he could not work at home.

Mr. Miller would approve the complainant to work at home and then the day prior to the date Mr. Miller had authorized the complainant to work at home, Mr. Miller would inform the complainant

late in the day that the complainant was not authorized to work at home the next day, that the complainant had to report to the office.

The agency is referred to the exhibits for dates and time periods.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**19.      If you contend, with respect to any allegation that forms the basis of your complaint, that the Agency treated any other employee not in your class for disability more favorably than it treated you in similar circumstances, please identify each and every such employee and describe in detail how you contend that individual received better treatment than you.**

The complainant does not understand this interrogatory question nor does he understand what is meant by "any other employee not in your class for disability." However, the complainant will attempt to answer this interrogatory as best as he can.

This interrogatory requests the complainant violate the privacy act rights of other agency employees which the complainant will not do even though agency officials violated complainant's privacy act rights and agency officials Messrs. Mueller and Miller have violated the privacy act rights of at least eight agency employees not including the complainant. How would the complainant know the medical conditions of other agency employees unless agency officials had disclosed the medial

conditions of other agency employees to the complainant? How would the complainant know what reasonable accommodation other agency employees had requested unless agency officials had disclosed the reasonable accommodation requests of other agency employees to the complainant? How would the complainant know what reasonable accommodation requests agency officials had approved for other agency employees unless agency officials had disclosed the reasonable accommodation approvals agency officials had approved for other agency employees to the complainant? The complainant will not violate the privacy act rights of other agency employees.

The complainant will admit that Mr. Mueller disclosed the private medical condition(s) of agency employee(s) to the complainant which medical conditions the complainant did not have a need to know.

The complainant will admit that Mr. Mueller disclosed the private medical family history, condition and status of an agency employee and the employee's family member to the complainant which private medical and family information the complainant did not have a need to know.

The complainant will admit that Mr. Mueller disclosed the private marital problem(s) of an agency employee to the complainant which marital problems the complainant did not have a need to know.

The complainant will admit that Mr. Miller disclosed the private medical condition(s) of agency employee(s) to the complainant which medical condition(s) the complainant did not have a need to know.

The complainant will admit that Mr. Miller disclosed the employee's name, handicap medical condition and the reasonable accommodation Mr. Miller was providing to a number of Post Audit Group (PAG) employees which private medical information the complainant did not have a need to

know and, further, that Mr. Miller disclosed to the complainant the private medical information of said PAG employees to demonstrate and convince the complainant that Mr. Miller provides handicap employees with reasonable accommodation and does not discriminate.

The complainant had been authorized by agency officials to earn and use credit hours to assist the complainant in the control of his narcolepsy. Mr. Miller and Ms. Stracke's refusal to allow the complainant to continue to earn and use credit hours and their discontinuance of the credit hour reasonable accommodation the complainant had been authorized is a violation of the Rehabilitation Act. It is noted that the agency has lost every administrative and court case involving credit hours and the agency's employees that the complainant is aware of.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**20.    If you claim entitlement to compensatory damages in connection with the allegation(s) in your complaint, please describe in detail each and every basis for your claim for compensatory damages, including, but not limited to, the nature, extent and duration of any ailment or loss; each and every fact and occurrence upon which you rely in claiming compensatory damages; and the date and circumstances of physical illness or condition,**

**emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future**

**pecuniary losses and other nonpecuniary losses.**

Exhibit numbers 410 through 435 are responsive. The doctor had to cancel the July medical

appointment and rescheduled it for August 2006. This discovery response will be supplemented and

the physician's statement forwarded when received.

The complainant's discovery response to the agency's request for interrogatories, admissions

and production of documents is attached hereto and incorporated herein by reference to include, but

not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11;

production of document responses 1 and 2; the Index; all documents; complainant's EEO

interrogatory response dated September 28, 2005, and November 28, 2005, which are included in

the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and

allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**21.**    **Please identify each and every person directly or indirectly involved in or who otherwise**

**has knowledge of the facts, occurrences, or bases for your claim for compensatory damages**

**described in your response to Interrogatory No. 20 above and identify all oral or written**

**statements or communications by all such persons related to your claim.**

The complainant's discovery response to the agency's request for interrogatories, admissions

and production of documents is attached hereto and incorporated herein by reference to include, but

not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11;

production of document responses 1 and 2; the Index; all documents; complainant's EEO

interrogatory response dated September 28, 2005, and November 28, 2005, which are included in

the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and

allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

## COMPLAINANT'S RESPONSE

## TO THE AGENCY'S REQUESTS FOR ADMISSIONS DATED JULY 3, 2006

**1.      Please admit that the Agency requested medical documentation concerning your disabilities in an October 19, 1998 memorandum to you from Danny Harris, then-Acting Director, Financial Management Operations.**

The complainant denies the agency's request for admission number 1 and admits that:

a) said admission request is written in the double meaning writing used by officials of this agency, i.e., the sentence is written to say one thing and imply something else;

b) agency officials had a copy of complainant's medical records;

c) the complainant had already provided the agency a copy of complainant's medical records;

d) agency officials had already determined the complainant was an otherwise qualified handicap employee entitled to reasonable accommodation;

e) the complainant had already been authorized reasonable accommodation by former agency officials;

f) current agency officials did not have a legal right to request additional medical information after former agency officials had determined the medical information the complainant had submitted was sufficient to make a reasonable accommodation determination which they had done;

g) agency officials refused to state why they needed a copy of the complainant's medical records;

h) agency officials refused to inform the complainant verbally and/or in writing why the agency officials needed a total, complete and unrestricted access to, and a copy of, all of the Complainant's medical records,

i) agency officials refused to inform complainant's legal counsel verbally and/or in writing why the agency officials needed a total, complete and unrestricted access to, and a copy of, all of the complainant's medical records,

j) the purpose of the agency's October 19, 1998, request for complainant's medical records was apparently not to provide the complainant with reasonable accommodation but to terminate the complainant's employment;

k) the medical release form prepared by agency officials would have authorized agency officials total, complete and unrestricted access to, and a copy of, all of the Complainant's medical records when signed;

l) current agency officials do not have the right to rescind a reasonable accommodation determination made by former agency officials;

m) the agency's blanket request for a copy of all of the complainant's medical records violated federal statutes;

n) agency officials discontinued their September through December 1998 request for Complainant's medical records when they learned they would have to file a motion to compel and there would be a discussion with an administrative and/or federal judge concerning the agency's request and justification for, and planned use of, Complainant's medical records;

o) in December 1998, Mr. Danny Harris authorized the complainant handicap reasonable accommodation without obtaining an updated copy of complainant's medical records because agency

officials had a copy of complainant's medical records and did not need an updated copy of the complainant's medical records and could not justify their blanket request for total, complete and unrestricted access to, and a copy of, all of the Complainant's medical records;

p) in December 1998, Mr. Danny Harris rescinded the letter that had placed the complainant on paid administrative leave and that barred the complainant from entering the agency's facilities;

q) the non-approved Joint Stipulations and Agreements of the Parties Document Dated July 5, 2006, Prepared by the Complainant is attached hereto and incorporated herein by reference as if fully stated herein; and

r) the complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**2.    Please admit that, to date, you have not furnished to the Agency the medical documentation requested in the October 19, 1998 memorandum referenced in Request for Admission No. 1.**

The complainant denies the agency's request for admission number 2 and admits the complainant's response to the agency's request for admission number 1 is incorporated herein by reference as if fully stated herein.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**3.    Please admit that the Agency did not approve the Flexiplace Work Agreement dated February 10, 2000 (at Tab F-E of the ROI) in the form it was originally submitted by you.**

The complainant denies the agency's request for admission number 3 and admits that:

a) "Flexiplace Program" is the subject of the agency's Personnel Manual Instruction, PMI 368-1, dated August 30, 1995;

b) PMI 368-1 states that:

1)    "Flexiplace, also known as flexible workplace, work-at-home, telecommunting, and teleworking, refers to paid employment performed away from the office. .... As a model workplace initiative, it will ..., increase Department flexibility, reduce commutes and help employees meet work and family concerns. ...." *PMI 368-1*, 8/31/1995, Item I. @ p. 1;

2)    "A Flexiplace work agreement (Appendix B) is required for all participants.  When an employee makes a request in writing to participate in the flexiplace program, the request will address the position and employee criteria set forth in item 1 of Appendix A.  The supervisor must then consider the request and

respond with a written decision within, but no later than, twenty working days. If the request is denied, the supervisor must provide reasons for the denial. ...." *Ibid*, Item IV.3. @ p. 2;

    3) "The work agreement is an agreement between the employee and the supervisor requiring them to adhere to applicable guidelines and policies. Each employee and supervisor must sign the attached Flexiplace work agreement that covers the terms and conditions of the Flexiplace program. For evaluation purposes, the signed agreement must then be submitted to the Flexiplace Coordinator. Amendments to the signed agreement may supplement, but not negate, any of the terms or conditions set forth in the original agreement." *Ibid*, Appendix A, Item 2. @ p. a 2;

    4) "Work away from the office will vary depending upon the individual arrangements between employees and their supervisors. Each work agreement should normally provide for a minimum of one day per week in the office. This will ensure that the employee is available in the office during the week for face-to-face meetings, access to facilities, etc. Supervisors and employees may mutually agree to exceptions to the minimum number of days in the office." *Ibid*, Appendix A, Item 3.a. @ p. a 2;

c) the complainant submitted a written flexiplace work request to Mr. Maestri as required by PMI 368-1 that met and complied with the requirements of PMI 368-1, i.e., the flexiplace work agreement dated February 10, 2000;

d) Mr. Maestri was the complainant's supervisor;

e) the approval authority for a flexiplace work agreement rests with the employee's supervisor;

f) Mr. Maestri had the authority to approve the flexiplace work agreement dated February 10, 2000;

g) a flexiplace work agreement approved by the supervisor is submitted to the Flexiplace Coordinator only for "evaluation purposes;"

h) the Flexiplace Coordinator does not have flexiplace work agreement approval authority;

i) the authority to approve handicap reasonable accommodation for an employee rests with the employee's supervisor;

j) Mr. Maestri had the authority to approve reasonable accommodation for the complainant;

k) Mr. Maestri authorized the complainant handicap reasonable accommodation in accordance with and, as authorized, by the Rehabilitation Act;

l) the written handicap reasonable accommodation amendments of the flexiplace work agreement dated February 10, 2000:

1) authorized the complainant handicap reasonable accommodation and supplemented and did not negate any of the terms or conditions set forth in the original agreement;

2) were mutually agreed to by Mr. Maestri, complainant's supervisor, and the complainant as allowed and authorized by PMI 368-1;

3) improved the complainant's ability to meet work and family concerns by reducing work-related stress;

4) improved the effectiveness of the narcoleptic medicine taken to control the complainant's narcolepsy by reducing work-related stress:

m) Mr. Maestri told the complainant that the flexiplace work agreement dated February 10, 2000, was approved;

n) the flexiplace work agreement dated February 10, 2000, was approved by Mr. Phil Maestri, Director, Financial Improvement and Post Audit Operations (FIPAO), OCFO;

o) from February 10, 2000 through May 23, 2005:

1) the complainant was authorized to work under the terms of the flexiplace work agreement dated February 10, 2000;

2) every one of the complainant's supervisors, e.g., Phil Maestri, Richard Mueller, Chuck Miller, Gerry Hull and James Evans, had knowledge of and was aware of the reasonable accommodation terms of the flexiplace work agreement dated February 10, 2000;

3) every one of the complainant's supervisors, e.g., Phil Maestri, Richard Mueller, Chuck Miller, Gerry Hull and James Evans, authorized the complainant to work under the reasonable accommodation terms of the flexiplace work agreement dated February 10, 2000; and

4) the complainant did work under the terms of the flexiplace work agreement without a problem;

p) the complainant's flexiplace work agreement dated February 10, 2000, is a valid formal written flexiplace work agreement between the agency and the complainant as Mr. Maestri did not deny said flexiplace work agreement in writing as required by PMI 368-1;

q) the only valid formal written flexiplace work agreement executed between the agency and the complainant is the flexiplace work agreement dated February 10, 2000; and

r) if the agency alleges the mutually agreed-to written handicap reasonable accommodation amendments of the flexiplace work agreement dated February 10, 2000, were NOT allowed or

authorized by PMI 368-1 then the agency has admitted agency officials other than Mr. Maestri have intentionally:

> 1) refused to continue the reasonable accommodation Mr. Maestri authorized the complainant,

> 2) refused to provide the complainant with reasonable accommodation, and

> 3) discriminated against the complainant on the basis of his handicaps.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**4.    Please admit that the Flexiplace Work Agreement (at Tab F-2-H of the ROI) signed by Charles Miller on May 24, 2005 is the only formal written flexiplace agreement executed for you by the Agency.**

The complainant denies the agency's request for admission number 4 and admits:

a) the complainant's response to the agency's request for admission number 3 is incorporated herein by reference as if fully stated herein;

b) Ms. Linda Stracke and Mr. Miller required the complainant to remove the reasonable accommodation provisions from the flexiplace work agreement dated February 10, 2000;

c) the complainant was forced under duress to sign the flexiplace work agreement dated May 24, 2005;

d) Ms. Stracke and Mr. Miller told the complainant that he would not be allowed to continue to work on flexiplace unless the complainant removed the reasonable accommodation provisions from the flexiplace work agreement and signed a revised flexiplace work agreement that did not include the previously authorized reasonable accommodation provisions;

e) the flexiplace work agreement dated May 24, 2005, is an **invalid** flexiplace work agreement;

f) Ms. Stracke and Mr. Miller required the complainant to execute a revised invalid flexiplace work agreement in May 2005 because:

1) in June 2004 the complainant reported supervisor EEO violations concerning Mr. Richard Mueller, Supervisor, Indirect Cost Group, Financial Improvement and Post Audit Operations, Office of the Chief Financial Officer (OCFO), to Messrs. Jack Martin, Chief Financial Officer (CFO), and Mark Carney, Deputy CFO, OCFO, agency;

2) in July 2004 the complainant reported grantee indirect cost rate proposal fraud to Messrs. Jack Martin, Chief Financial Officer (CFO), and Mark Carney, Deputy CFO, OCFO, agency; and to Mr. Jack Higgins, Inspector General, Office of the Inspector General, agency;

3) from June 2004 through November or December 2005 and specifically March 2005 the complainant reported the internal control violations of Ms. Mary Gougisha to Messrs. Jack Martin, Chief Financial Officer (CFO), Mark Carney, Deputy CFO, OCFO, and Danny Harris, Deputy CFO, OCFO, agency;

4) in December 2004 the complainant filed a MSPB compliance petition against the agency;

5) in January 2005 the complainant requested EEO handicap refusal to continue reasonable accommodation counseling;

6) in March 2005 the complainant filed an EEO Handicap Discrimination refusal to continue reasonable accommodation complaint against the agency; and

7) the complainant was authorized to work, earn and use credit hours pursuant to the reasonable accommodation terms set forth in the February 10, 2000, flexiplace work agreement.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**5.    Please admit that your requests to the Agency for permission to work on matters related to your litigation with the Agency on Government time are unrelated to any disability you claim.**

The complainant denies the agency's request for admission number 5 and admits:

a) the complainant's request to work on the "Case" is related to:

1) complainant's narcolepsy,

2) the medical control of complainant's narcolepsy,

3) the interaction between the effectiveness of the complainant's narcoleptic medication and the stress of the "Case;"

b) the "Case" causes the complainant stress;

c) the stress of the "Case" was causing narcoleptic medication control problems for the complainant in February 2000 as reflected by complainant's email 2000 to Mr. Maestri;

d) the "Case" reasonable accommodation Mr. Maestri authorized the complainant in February 2000:

1) decreased the complainant's stress, and

2) allowed the complainant to decrease the medication dosage that controls complainant's narcolepsy from 60 to 20 mg/day, which medication dosage level provided the complainant with "adequate control" of his narcolepsy during 2003 through June 2004;

e) commencing in November 2004 through the date of this document, the agency's November 2004 refusal to continue the February 2000 "Case" reasonable accommodation has:

1) increased the complainant's stress,

2) caused the complainant to suffer narcoleptic medication control problems,

3) negatively interfered with the effectiveness of the medication the complainant takes every day to control his narcolepsy; and

4) required complainant's narcoleptic medication dosage to be increased from 20 to 60 mg/day, then to 80 mg/day, before the medication dosage provided the complainant with "adequate, some days barely adequate, control;"

f) the stress of the July 21, 2006, Privacy Act status conference caused the complainant inadequate medication control:

1) during the afternoon of July 21, 2006, even through the medication dosage had been increased from 80 to 100 mg/day;

2) all day July 22 and 23, 2006; and

3) may require the medication dosage be increased from 80 to 100 or 120 mg/day before the medication dosage will provide the complainant with "adequate control;" and

g) said response is more fully explained in the complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**6.      Please admit that it is the standard policy of the Agency to require employees who work at home on a regular basis to execute a written flexiplace Work Agreement with the Agency.**

The complainant denies the agency's request for admission number 6 and admits:

a) the standard policy is not defined, explained nor identified;

b) the regular basis is not defined, explained nor identified;

c) admission request # 6 implies the agency has a "standard policy" which as far as the complainant knows it does not, and if the agency does in fact actually have a standard policy as implied by admission request # 6 the complainant doesn't know if agency officials actually adhere to a said, unknown, "alleged" standard policy or not and, based on complainant's experience with this

agency and the supervisor's approval of complainant's flexiplace work agreement and requests for reasonable accommodation, agency officials would not adhere to, comply with and/or follow a standard policy even if the agency had a standard policy;

d) admission request # 6 implies the agency has a "regular basis" which as far as the complainant knows the agency does not have a regular basis policy, and if the agency does in fact actually have a regular basis policy as implied by admission request # 6 the complainant doesn't know if agency officials actually adhere to a said, unknown, regular basis policy or not and, based on complainant's experience with this agency and the supervisor's approval of complainant's flexiplace work agreement and requests for reasonable accommodation, agency officials would not adhere to, comply with and/or follow a regular basis policy even if the agency had a regular basis policy;

e) the flexiplace work agreement referenced in admission request # 6 is not identified;

f) a copy of the agency's "alleged" standard policy, regular basis and flexiplace agreement was not provided;

g) agency supervisors have allowed other agency employees to work at home on flexiplace without a signed formal written flexiplace work agreement;

h) agency supervisors have allowed other agency employees to work at home on flexiplace before the employees had taken the agency's mandatory flexiplace course;

i) Mr. Maestri required the complainant to take, and the complainant did take, the agency's mandatory flexiplace course;

j) Mr. Maestri, complainant's supervisor, required the complainant to submit, and the complainant did submit, a written flexiplace work agreement in accordance with the agency's

flexiplace and reasonable accommodation policies which written flexiplace work agreement was approved by Mr. Maestri and is dated February 10, 2000; and

k) the complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**7.     Please admit that the allegations in your complaint arise from the same facts that gave rise to your complaint to the Office of Special Counsel (OSC) designated OSC File No. MA-05-0707.**

The complainant denies the agency's request for admission number 7 as it is logically and statutorily impossible for a handicap discrimination, EEO and handicap reprisal, and whistleblower reprisal complaint to "arise from the same facts" as the legal, evidentiary and proof requirements applicable to each specified complaint are all different.

The handicap discrimination refusal to continue reasonable accommodation allegations of the agency's complaint numbers ED-2005-28-00 and ED-2006-11-00 are basically, but not all inclusive or limited to, based on the agency's handicap retaliatory actions of discontinuing the reasonable accommodation agency officials had authorized the complainant, which retaliatory actions were implemented by Messrs. Richard Mueller and Danny Harris, and Ms. Joanna Dailey against the complainant on or about November 19, 2004. The agency is referred to the Report of Investigation

(ROI) the agency forwarded to the complainant by letter dated January 10, 2006, for further explanation and identification of the handicap retaliatory actions; however, that ROI is only applicable to agency no. ED-2005-28-00 as the agency has not issued a ROI for agency no. ED-2006-11-00.

OSC File No. MA-05-0707 was filed May 27, 2005 and is basically, but not all inclusive or limited to, based on the appellant's whistleblower disclosures of July 2004 involving grantee fraud and the whistleblower reprisal actions that agency officials starting taking against the complainant in July 2004. The agency is referred to the paperwork the complainant filed with the OSC which the agency has a copy of for further explanation of the whistleblower reprisal actions.

EEO reprisal allegations are basically, but not all inclusive or limited to, based on the complainant's EEO disclosure of June 23, 2004, and the agency retaliatory actions that started in November 2004 and have continued through the date of this document.

The complainant admits that the handicap discrimination and handicap and EEO reprisal complaints designated as agency file nos. ED-2005-28-00 and ED-2006-11-00, and the whistleblower reprisal complaints designated OSC File Nos. MA-05-0707 and MA-05-1960, are based on similar facts, some of which overlap; however, said complaints are not based on the same facts. In addition, the complainant admits that the OSC sent the complainant a letter that states an employee could legally file and pursue a whistleblower reprisal and EEO complaint based on similar facts, some of which overlap.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO

interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**8.     Please admit that your OSC closed its investigation into your complaint referenced in Request for Admission No.7 without taking any corrective action on the complaint.**

The complainant denies the agency's request for admission number 8 and admits that:

a) it is not the complainant's OSC, i.e., "your OSC," and further admits that if the OSC was the complainant's OSC, the OSC would be better managed and whistleblowers would receive the protection and support they deserve for reporting the corruption, fraud and gross mismanagement activities of agency officials;

b) the complainant has no way of knowing, finding out or determining if the OSC has taken corrective action on a complaint unless the OSC states they have taken corrective action and it is OSC policy not to state what the OSC has done, decided to do, might do, won't do and/or will do concerning a complaint;

c) the agency has attempted to use double talk in this admission through the incorrect use of words and phrases with the objective of implying the OSC made a legally binding judicial determination concerning the validity of the facts and sufficiency of proof which support the evidence, claims and allegations of complainant's whistleblower reprisal and EEO complaints even though agency officials know:

1) the OSC does not and can not make a legally binding judicial determination concerning anything,

2) the OSC is not authorized to make judicial determinations, and

3) pursuant to a whistleblower statute amendment passed by Congress, the OSC's whistleblower reprisal findings and conclusions of law are not admissible in any court or administrative proceeding as proof of, or not proof of, anything.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**9.     Please admit that your OSC complaint referenced in Request for Admission No. asserted that the Agency denied the accommodation at issue in this complaint because Agency management officials were upset with you for protected whistleblowing activities.**

The complainant denies the agency's request for admission number 9 and admits:

a) the complainant does not know what "agency request for admission no. asserted" this request for admission is referring to;

b) the complainant is not required to guess which OSC complaint the agency's request for admission # 9 refers to;

c) the agency's use of the term "this complaint" is not defined, explained or identified;

d) the agency's use of the term "this complaint" is not clear as it could be referring to the handicap discrimination complaint designated as ED-2005-28-00 or it could be referring to the EEO and handicap reprisal and handicap discrimination complaint designated as ED-2006-11-00 or it could

be referring to both handicap discrimination complaints designated as ED-2005-28-00 and ED-2006-11-00 as the complainant has filed a motion to have the complaints joined for processing;

e) the agency's use of the term "agency denied the accommodation at issue" is not defined, explained nor identified;

f) the agency's use of the term "agency denied the accommodation at issue" is not clear as it could be referring to the agency's discontinuance of the complainant's reasonable accommodation set forth in the handicap discrimination complaint designated as ED-2005-28-00 or it could be referring to the agency's discontinuance of the complainant's reasonable accommodation set forth in the EEO and handicap reprisal and handicap discrimination complaint designated as ED-2006-11-00 or it could be referring to the agency's discontinuance of the complainant's reasonable accommodation set forth in both handicap discrimination complaints designated as ED-2005-28-00 and ED-2006-11-00 as the complainant has filed a motion to have the complaints joined for processing;

g) the agency's use of the term "protected whistleblower activities" is not defined, explained nor identified;

h) the agency's term "protected whistleblower activities" could refer to the complainant's:

1) November 1997 whistleblower disclosures concerning the implementation of GAPS that he made to the Office of Inspector General, agency;

2) June 1998 whistleblower disclosures concerning the implementation of GAPS and agency fraud and gross mismanagement activities he made to a number of agency officials including the Office of Inspector General, agency, and the OSC;

3) July 2004 whistleblower disclosures concerning external grantee fraud he made to Messrs. Jack Martin and Mark Carney, and Jack Higgins, Inspector General, Office of Inspector General, agency; and

4) March 2005 whistleblower disclosures concerning an internal control issue he made to Messrs. Jack Martin, Mark Carney, Danny Harris, and Jack Higgins;

i) the agency's term "protected whistleblower activities" could refer to whistleblower disclosures that were or were not made by the complainant which agency officials believe were made by the complainant; and

j) the complainant alleged agency officials were upset with him because the complainant's:

1) November 1997 whistleblower disclosures delayed the implementation of GAPS;

2) June 1998 whistleblower disclosures concerned the implementation of GAPS and agency fraud and gross mismanagement activities which disclosure resulted in numerous negative news releases involving agency fraud and gross mismanagement and the OSC issuing a public news release and finding of agency gross mismanagement;

3) June 1998 whistleblower disclosures concerned the implementation of GAPS and agency fraud and gross mismanagement activities which disclosure resulted in public and private congressional hearings and negative news releases involving agency fraud and gross mismanagement which agency officials blamed the complainant for;

3) June 2004 report of supervisor EEO violations concerning Mr. Richard Mueller, Supervisor, Indirect Cost Group, Financial Improvement and Post Audit Operations, Office of the Chief Financial Officer (OCFO), to Messrs. Jack Martin, Chief Financial Officer (CFO), and Mark Carney, Deputy CFO, OCFO, agency;

4) July 2004 report of grantee indirect cost rate proposal fraud to Messrs. Jack Martin, Chief Financial Officer (CFO), and Mark Carney, Deputy CFO, OCFO, agency; and to Mr. Jack Higgins, Inspector General, Office of the Inspector General, agency;

5) June 2004 through November or December 2005 and specifically March 2005 report of internal control violations by Ms. Mary Gougisha to Messrs. Jack Martin, Chief Financial Officer (CFO), Mark Carney, Deputy CFO, OCFO, and Danny Harris, Deputy CFO, OCFO, agency;

6) December 2004 filing of a MSPB compliance petition against the agency;

7) January 2005 request for EEO handicap discrimination refusal to continue reasonable accommodation counseling; and

8) March 2005 filing of an EEO Handicap Discrimination, refusal to continue reasonable accommodation complaint against the agency.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**10.    Please admit that the Agency has continued to allow you to work at home on Government business on an as needed basis.**

The complainant denies the agency's request for admission number 10 and admits:

a) Mr. Mueller allowed the complainant to work at home prior to November 19, 2004, on:

1) the Case" as the "Case" was official government business, and

2) government business,

b) Mr. Mueller refused to allow the complainant to work at home after November 18, 2004, on:

1) the "Case" as the "Case" was "allegedly" no longer official government business, and

2) government business, Exhibit Numbers 178 and 182,

c) Mr. Mueller refused to allow the complainant to work at home during November and December 2004, as agency officials, previously identified, decided in November 2004 to discontinue the reasonable accommodation previously authorized and provided the complainant;

d) Mr. Miller allowed the complainant to work at home prior to November 19, 2004, on:

1) the "Case" as the "Case" was official government business, and

2) government business;

e) Mr. Miller refused to allow the complainant to work at home after November 18, 2004, on:

1) the "Case" as the "Case" was "allegedly" no longer official government business, and

2) government business.

f) Mr. Miller refused to allow the complainant to work at home from Jan - April 4, 2005, although some days may have been approved, as agency officials, previously identified, decided in November 2004 to discontinue the reasonable accommodation previously authorized and provided the complainant;

g) Mr. Miller has not always allowed the complainant to work at home,

h) Mr. Miller approved the complainant's proposed weekly work schedule which schedule authorized the complainant to work at home on certain days of that week and then, towards the end of a workday, Mr. Miller would inform the complainant that he had to report to the office as he was not authorized to work at home the next day,

i) the agency's approval for the complainant to work at home has been turned on and off by day or week;

j) the agency has failed to provide the complainant with "reasonable handicap accommodation" and instead has provided the complainant with "**unreasonable** handicap accommodation" when senior agency officials authorize and/or allow Mr. Miller to turn on and off the agency's authorization for the complainant to work at home;

k) the term "on an as needed basis" was not meant to allow the supervisor to change by day an authorized work schedule;

l) the term "on an as needed basis" was never defined to mean from one day to the next; and

m) the complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

**11.    Please admit that the Agency currently allows you to work at home on Government business on an as needed basis.**

The complainant denies the agency's request for admission number 11 and admits:

a) the term "on an as needed basis" has multiple meanings as explained in complainant's response to the agency's request for admission number 10;

b) the "on an as needed basis" flexiplace option, as originally discussed and used by the complainant and his supervisor pursuant to the terms of the flexiplace work agreement dated February 10, 2000, was chosen by the complainant with supervisory input and approval as said option would allow the complainant to:

1) determine with supervisory input the days when the complainant would be working in the office and at home, and

2) change, with notice to the supervisor, a scheduled office work day to a home work day if said change would assist the complainant in the control of his narcolepsy and thereby allow him to continue to work a full work day;

c) the "on an as needed basis" flexiplace option as defined by agency officials commencing May 24, 2005, means the supervisor can change the complainant's work schedule on a daily basis and does not allow the complainant to change the supervisor's approved work schedule if said change would assist the complainant in the control of his narcolepsy as that is what sick leave is for, i.e., you have a problem, charge the time to sick leave;

d) since May 24, 2005, the complainant has not known from one day to the next if he will or will not be authorized to work at home and that type of variable unknown work schedule has increased not decreased complainant's work stress;

e) the agency has failed to provide the complainant with handicap reasonable accommodation since November 19, 2004, due to the agency's refusal to continue to provide the reasonable accommodation the complainant had been authorized;

f) the agency has failed to provide the complainant with handicap reasonable accommodation since May 24, 2005, due to the variable unknown work schedule;

g) the time period applicable to the agency's request for admission # 11 is not defined;

h) if the time period applicable to the agency's request for admission # 11 was prior to November 19, 2004, then the complainant admits the agency allowed the complainant to work at home on government business on an as needed basis as the term "government business" as used herein would include working on the "Case" as working on the "Case" was considered official government work-related authorized business;

i) if the time period applicable to the agency's request for admission # 11 is after November 18, 2004, then the complainant:

1) admits Messrs. Mueller and Miller required the complainant to report to the office and refused to authorize the complainant to work at home when they knew the complainant did not have a work assignment to work on because they had not assigned work to the complainant, and

2) denies the agency allowed the complainant to work at home on government business on an as needed basis during some of the days of this specified time period;

j) if the time period applicable to the agency's request for admission # 11 is after April 2006 then the complainant:

1) denies the complainant is allowed to work at home on government business on an as needed basis, and

2) admits Mr. Miller, complainant's current supervisor, has started to allow the complainant to sometimes work at home on government business, however, it is not on an as needed basis and the term "government business" as used herein does NOT include working on the "Case;"

k) the complainant admits that Mr. Miller, complainant's current supervisor, has been more willing for the past four to eight weeks to establish and approve a weekly work schedule for the complainant and allow the complainant to actually work the established weekly work schedule and work at home most likely solely due to the status of the "Case;"

l) the complainant admits that the complainant has no way of knowing if Mr. Miller and/or agency officials will continue or will not continue to establish and approve a weekly work schedule for the complainant and allow the complainant to actually work the established weekly work schedule and work at home;

m) the complainant admits that there is no guarantee complainant's supervisor and/or agency officials will continue or will not continue to establish and approve a weekly work schedule for the complainant and allow the complainant to actually work the established weekly work schedule and work at home as the complainant's supervisor and agency officials continue to deny their current approval for the complainant to work at home is due to any of the complainant's handicaps or that their approval for the complainant to work at home is reasonable accommodation;

n) the complainant admits that the current willingness of agency officials to partially provide the complainant with some of the reasonable accommodation agency officials previously authorized the complainant might NOT continue since agency officials continue to deny they are now providing or ever did provide the complainant with reasonable accommodation; and

Page 48 of 53

o) the complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

## COMPLAINANT'S RESPONSE TO THE

## AGENCY'S REQUESTS FOR PRODUCTION OF DOCUMENTS DATED JULY 3, 2006

**1.      Please produce each and every document that is identified or referred to in your answers to the above Interrogatories, or that was consulted by you in preparing such Interrogatory responses.**

The documents the complainant believes are applicable to the litigation involving the agency and complainant have been identified as best as the complainant can do during the allowed discovery response time and said documents are listed on the Index. The Index was prepared in accordance with the exhibit requirements of the MSPB. A copy of the documents listed on the Index was included with the complainant's response to the agency's discovery requests.

The complainant's preparation of the Index is far more than what the agency did for the plaintiff in the privacy act. The agency released one full storage box of documents consisting of approximately 4,000 pages, some double sided, in the privacy act complaint and stated in the agency's discovery response that the documents found therein might be responsive to the plaintiff's discovery request. The amount of documents the complainant has released to the agency herein is far less than

the amount of documents the agency released to the plaintiff in the privacy act complaint and the documents the complainant released herein are responsive to the agency's discovery requests. Please note there is a big difference between "might be responsive" and "are responsive."

In most instances the documents listed in the Index are not referenced to a specific interrogatory or admission response as the complainant did not have anything close to the amount of time it would take to actually cross-reference a document to a specific interrogatory and/or admission response. Agency officials through Mr. Miller, complainant's supervisor, would only authorize three work days and refused to authorize the amount of administrative leave the complainant had requested to work on his response to the agency's discovery requests. The complainant did not request all the administrative leave that would actually be needed to respond to the agency's discovery request because that would take at least 60 to 90 days and the Judge's order only authorized 30 days for the submission of a discovery response. In any case, complainant's supervisor would only authorize 26 hours of administrative leave.

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

2.       **With respect to each Request for Admission not admitted in full, please produce each and every document that is identified or referred to, or that otherwise supports your answers to said Request, or that was consulted by you in preparing such answer.**

The complainant's discovery response to the agency's request for interrogatories, admissions and production of documents is attached hereto and incorporated herein by reference to include, but not be limited to, interrogatory responses, e.g., # 1 through 21; admission responses, # 1 through 11; production of document responses 1 and 2; the Index; all documents; complainant's EEO interrogatory response dated September 28, 2005, and November 28, 2005, which are included in the Report of Investigation applicable to agency number ED-2005-28-00; and the evidence and allegations set forth in the OSC whistleblower reprisal complaints MA-05-0707 and MA-05-1960.

Respectfully Submitted,

_aug 4, 2006_
Date

_John Gard_
John Gard, Complainant Pro se
5045 Rushlight Path
Columbia, MD 21044-1295
Home phone:  410-715-0244
Work phone:  202-377-3830
Fax Number:  None
Email: saintiam@verizon.net

## NOTARIZED DECLARATORY AND CERTIFICATION STATEMENT

The undersigned, being first duly sworn, deposes and states that I, John F. Gard, Complainant in the EEO complaints of John Gard v. Margaret Spellings, Secretary, U.S. Department of Education, i.e., Agency numbers ED-2005-28-00 and ED-2006-11-00, has read the above and foregoing, and the statements made therein are true and correct to the best of my knowledge, information and belief. In making this statement, I understand Section 1001, Title 18 of the U.S. Code.

8/4/2006

John Gard, Complainant Pro se
5045 Rush Light Path
Columbia, MD 21044-1295

STATE OF MARYLAND    )
                     ) ss.
COUNTY OF HOWARD     )

Subscribed and sworn to before me on this 4th day of August, 2006.

Witness my hand and official seal.

My commission expires: _____

MAUREEN ANTHONY
NOTARY PUBLIC
HOWARD COUNTY, MD
My Commission Expires July 7, 2009

Notary Public

## CERTIFICATE OF SERVICE

I, John Gard, Complainant Pro se, hereby certifies that a true copy of the foregoing document and attachments was sent this day to the Agency's Designated Representative in this complaint, by placing the same in the U.S. Mail, first class postage prepaid, certified return receipt, addressed as follows:

Agency's Designated Representative
Ms. Joanna Dailey, Esq.
U.S. Department of Education
Office of the General Counsel
400 Maryland Avenue, S.W., Room 6C142
Washington, D.C. 20202

Aug. 4, 2006
Date

John Gard, Complainant Pro se
5045 Rushlight Path
Columbia, MD 21044-1295

E:\DnLetters\Whistleblowing\EEO 2\JG Response to Agency Interrogatories 01.wpd

## UNITED STATES DISTRICT COURT
### For The DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN GARD,<br>  5045 Rushlight Path<br>  Columbia, Maryland 21004-1295, | )<br>)<br>)<br>) | |
| Plaintiff | )<br>) | |
| v. | )<br>) | Civil Action No. <u>1:07-cv-02303 (RMC)</u> |
| UNITED STATES DEPARTMENT<br>  of EDUCATION | )<br>)<br>) | |
| Defendant | )<br>) | |
| and | )<br>) | |
| MARGARET SPELLING, SECRETARY,<br>UNITED STATES DEPARTMENT<br>  OF EDUCATION<br>400 Maryland Avenue, S.W.<br>Washington, D.C. 20202 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

## PROPOSED ORDER

Upon consideration of Plaintiff's "Motion to Compel the Defendants to Answer the Revised Amended Complaint and Motion for Sanctions Due to Defendants' Violation of the Court's Order Dated April 2, 2008, and supporting documentation as well as Defendants' opposition to said motion,

IT IS HEREBY ORDERED THAT:

Plaintiff's "Motion to Compel the Defendants to Answer the Revised Amended Complaint and

Motion for Sanctions Due to Defendants' Violation of the Court's Order Dated April 2, 2008,"

is GRANTED.

_____
Date

_____
Honorable Rosemary M. Collyer
United States District Court Judge
for the District of Columbia

File ref:    2008-05-29 Sanction Order - Motion to Compel.wpd

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing ORDER within five (5) calendar days after the date it was sent via First Class Mail to the parties identified below.  I certify that on

_____, _____, 2008, the foregoing Order was sent via First Class Mail to the following:

John Gard, Plaintiff, pro se
5045 Rushlight Path
Columbia, MD 21044
      (V)    410.715.0244


OLIVER W. McDANIEL, D.C. BAR # 377360
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
      (V)    (202) 616-0739    (F)    202.514.8780

_____

File ref:    2008-05-29 Sanction Order - Motion to Compel.wpd