## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN GARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-2303 (RMC) |
| | ) | |
| UNITED STATES DEPARTMENT OF EDUCATION, *et al.*, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

On Dec. 21, 2007, Plaintiff John Gard, proceeding *pro se*, filed this action against the U.S. Department of Education and its Secretary, Arne Duncan,[1] alleging violations of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a, and the Fifth Amendment to the U.S. Constitution, among other things. He amended his complaint on April 18, 2008 [Dkt. # 9], and Defendants moved to dismiss on June 20, 2008. The Court granted Defendants' motion in part on October 2, 2008, finding that Mr. Gard had failed to comply with Federal Rule of Civil Procedure 8, and dismissed the amended complaint without prejudice. *See* Dkt. # 22. The Court ordered Mr. Gard to file an amended complaint correcting the deficiencies identified in its Order dismissing the complaint no later than November 3, 2008. Mr. Gard failed to do so, and this case was dismissed without prejudice on November 24,

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Arne Duncan is substituted as Secretary for his predecessor, Margaret Spellings, Secretary of the Department of Education.

2008.

Mr. Gard moved for reconsideration on March 12, 2009, arguing that he did not have notice of the Court's October 2 or November 24, 2008, Orders until March 2009. In an Order dated March 17, 2009, the Court, finding it in the interest of justice to accept Mr. Gard's explanation, granted his motion and ordered him to file an amended complaint in compliance with Rule 8 no later than April 17, 2009. *See* Dkt. # 28. Mr. Gard filed his second amended complaint on April 9, 2009, Dkt. # 29, and Defendants moved to dismiss on June 1. *See* Dkt. # 32. Mr. Gard responded with a cross-motion for summary judgment. *See* Dkt. # 40. For the reasons set forth below, the Court will grant Defendants' motion to dismiss in part and deny it in part, and will deny Mr. Gard's cross-motion for summary judgment.

## I. FACTS

Mr. Gard is an employee of the Department of Education. He alleges that he suffers from chronic pain, narcolepsy, and Post Traumatic Stress Disorder ("PTSD"), all of which are "interrelated and what happens in one disability/impairment affects the condition and control of the other disabilities/impairments and Plaintiff's major life activities." Second Am. Compl. [Dkt. # 29] ¶ 58. He states that Defendants "were fully aware" of these disabilities when they hired him, and that they "considered Plaintiff to be handicapped, treated Plaintiff as being handicapped and provided Plaintiff with reasonable accommodation from approximately April 1, 1989 through November 22, 2004." *Id.* ¶¶ 54-55.

At some point prior to October 1998, for reasons not specified in the Second Amended Complaint, Mr. Gard appears to have taken leave from his employment. He states that from October through December 1998, he was engaged in "return-to-work" discussions with

Defendants, during which time Defendants had on file "a) Plaintiff's medical records, and b) Defendants' reasonable accommodation determinations and the reasonable accommodation authorized." *Id.* ¶ 42.  He returned to work in December 19998 pursuant to a Return-to-Work Agreement dated December 14, 19998. *Id.* ¶¶ 44-45.  He states that he disclosed "external grantee and Defendants' internal employee fraud to Mr. Jack Martin, Chief Financial Office, and Mr. John Higgins, Inspector General, Defendants," in July and August of 2004. *Id.* ¶¶ 47-48.  In November 2004, Defendants notified Mr. Gard that the reasonable accommodation he had been provided would no longer be provided. *Id.* ¶ 49.  Mr. Gard filed a "formal [EEO] handicap refusal to continue reasonable accommodation complaint against Defendants on March 14, 2005." *Id.* ¶¶ 16.C., 50.  Thereafter, he alleges his difficulties in securing a reasonable accommodation for his disabilities increased. *Id.* ¶ 50.  He notes that other employees received reasonable accommodations during the period in which his requests were denied. *Id.* ¶ 51.

On September 5, 2006, Mr. Gard emailed Defendants, attaching what he described as medical documentation and prior requests for reasonable accommodations.  *See id.*, Ex. 1 (Ex. 442:[2]  Sept. 5, 2006 email from Gard to Linda Stracke *et al.*).  Defendants replied that they were unable to locate "record of any written approval for a reasonable accommodation request from [Mr. Gard]." *Id.*, Ex. 1 (Ex. 443-1: Sept. 20, 2006 email from Stracke to Gard).  They went on to state that if Mr. Gard's medical condition required a reasonable accommodation, Defendants would consider his request upon the receipt of updated "(i.e., last three months)" medical documentation.

---

[2]  These additional exhibit numbers refer to exhibit numbers used by Mr. Gard in prior complaints and occasionally referenced in the current Second Amended Complaint.  The documents referenced in this opinion are all attached to the Second Amended Complaint as one exhibit, but the original numbers are often found in the bottom right hand corner of the specific documents in question.

-3-

*Id.* Mr. Gard responded that prior agency officials had determined he required a reasonable accommodation, that Defendants had no right to revoke that accommodation, and that he had previously responded to Defendants' requests for medical records. *Id.*, Ex. 1 (Ex. 444-1: Oct. 3, 2006 email from Gard to Stracke). He stated that Defendants' request for further documentation was proof that they had violated the Privacy Act and Rehabilitation Act by destroying or failing to maintain his records. *Id.*

Defendants again stated that they had "no record of an agency determination that" Mr. Gard was "a qualified individual with a disability or of any decision to provide [him] with any reasonable accommodation of a disability." *Id.*, Ex. 1 (Ex. 445: Nov. 24, 2006 email from Stracke to Gard). Mr. Gard reads this email as a denial from Defendants that he ever submitted medical records to Defendants, requested a reasonable accommodation, or was provided with a reasonable accommodation. *Id.* ¶¶ 34-36. Defendants also refused to provide Mr. Gard with a reasonable accommodation at that time, citing lack of current medical documentation upon which to base such accommodation. *See id.*, Ex. 1 (Ex. 445: Nov. 24, 2006 email from Stracke to Gard). Mr. Gard reads this as an admission that Defendants failed to maintain, destroyed, and/or refused to restore his official records. *Id.* ¶¶ 38-39. He also alleges that Defendants failed to secure, destroyed, or refused to restore his military retirement records during settlement negotiations in early 2007 which were part of a Privacy Act case he filed in 2000. *Id.* ¶¶ 31-32. On these facts, Mr. Gard alleges violations of the Privacy Act, Rehabilitation Act, Title VII, the Federal Records Act,[3] unspecified Equal Employment Opportunity Commission regulations, unspecified Office of Personnel Management regulations, and the Fifth Amendment. *See id.* Counts I-VII.

---

[3] 44 U.S.C. § 2901 *et seq.*

## II. LEGAL STANDARDS

### A. Rule 8

Federal Rule of Civil Procedure 8 requires that every complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each averment of a pleading be simple, concise, and direct." Fed. R. Civ. P. 8(a), (e)(1). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted). Federal Rule of Civil Procedure 41(b) permits the Court to dismiss either a claim or an action because of the plaintiff's failure to comply with the Federal Rules "or any order of [the] court." Fed. R. Civ. P. 41(b); *Ciralsky v. CIA*, 355 F.3d 661, 669 (D.C. Cir. 2004). Dismissal under Rule 8 "'is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Ciralsky*, 355 F.3d at 670 n.9 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). As under Rule 8, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do." *Id*. The facts alleged "must be enough to raise a right to relief above the speculative level." *Id*. "[A] complaint needs *some* information about the circumstances giving rise to the claims." *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555. But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 129 S. Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950.

### C. Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).

### III.  ANALYSIS

### A. Compliance with Rule 8

In an Order dated March 17, 2009, this Court "implore[d] Mr. Gard to consult and comply with Rule 8 of the Federal Rules of Civil Procedure" in filing his amended complaint. Dkt. # 28 at 3. Defendants argue that Mr. Gard has ignored the Court's Order and once again failed to adhere to the Federal Rules. Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") [Dkt. # 32] at 10.

Complaints filed by *pro se* litigants are held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even *pro se* litigants, however, must comply with the Federal Rules of Civil Procedure. *Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Mr. Gard's Second Amended Complaint is 30 pages long with 88 paragraphs and seven counts, plus 132 pages of "exhibits" which appear to be comprised largely of correspondence between Mr. Gard and the Department of Education and factual statements proffered by Mr. Gard regarding his alleged disabilities. Despite its length, however, the Second Amended Complaint is pared down significantly from its previous incarnation, which totaled 232 pages, 880

paragraphs, and 22 counts. *See* Dkt. # 9. Although Defendants are correct that the Second Amended Complaint at times "rambl[es] and . . . lack[s] chronological coherence," *see* Defs.' Mem. at 11, it is evident that Mr. Gard attempted to delete certain irrelevant information and eliminate some of the redundancies that plagued his previous complaints.

The Court finds that three of Mr. Gard's claims have been alleged with sufficient clarity to meet the requirements of Rule 8 — his claim regarding the maintenance of his records under the Privacy Act and his claims of retaliation and discrimination under the Rehabilitation Act. Mr. Gard's Privacy Act claim (Counts I, II, and III) is based on his belief that Defendants failed to secure, and perhaps destroyed, his personnel records, including medical and military records. Second Am. Compl. ¶ 1. He alleges that Defendants took possession of his personnel records in June 1998 and maintained possession through at least December 1998, *id.* ¶¶ 42-43, but that in November 2006 Defendants denied that he had submitted any medical records and therefore denied him a reasonable accommodation for his disabilities, though he had previously been given such accommodation. *Id.* ¶¶ 34-41. This is sufficient to allege a violation of the Privacy Act, which provides a civil remedy where an agency "fails to maintain any record concerning any individual with such . . . completeness as is necessary to assure fairness in any determination relating to the . . . benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C).

With respect to the Rehabilitation Act, Mr. Gard alleges a discriminatory failure to accommodate (*see* Count IV) and retaliation (Count VI). Mr. Gard suffers from "chronic pain, narcolepsy, and post-traumatic stress disorder (PTSD)" and he alleges that Defendants were aware of these conditions. Second Am. Compl. ¶¶ 54-58. He further alleges that he received a reasonable

accommodation for his disabilities pursuant to a December 1998 "Return-to-Work Agreement" negotiated with Defendants, *id.* ¶ 46, but claims that after notifying Defendants of internal employee fraud in 2004, he was told that he would no longer be provided with this reasonable accommodation. *Id.* ¶¶ 47-49. He complains that his difficulties in securing a reasonable accommodation increased after he filed a formal EEO complaint against Defendants in March 2005 for their failure to provide him with accommodations for his disabilities. *Id.* ¶ 50. The Rehabilitation Act incorporates the standards of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*. *See Norden v. Samper*, 503 F. Supp. 2d 130, 144 (D.D.C. 2007); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49 (D.D.C. 2003). The ADA provides that a federal agency shall not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). The ADA also provides that an employer shall not retaliate against an individual "because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this Act." 42 U.S.C. § 12203(a).

Thus, Mr. Gard's Second Amended Complaint is sufficient to put Defendants on notice of his Privacy Act claim regarding the maintenance of his records and his Rehabilitation Act claims of discrimination and retaliation. *See, e.g., Delaney v. District of Columbia*, 612 F. Supp. 2d 38, 40-41 (D.D.C. 2009) (addressing motion to dismiss on the merits where Court was able to isolate

three identifiable counts from "amid the morass of claims" in *pro se* plaintiff's "eighty-two page, twenty one count Complaint"). His remaining claims are insufficiently specific to satisfy Rule 8 as Mr. Gard fails to link any facts in the Second Amended Complaint to any particular statutes or regulations.

### B. Privacy Act

Although Mr. Gard's Privacy Act claim survives Rule 8, it nonetheless must be dismissed because it is barred by the statute of limitations at 5 U.S.C. § 552a(g)(5), which states:

> An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises . . .

Mr. Gard's Privacy Act claim is based on the allegation that Defendants destroyed or failed to safeguard "Plaintiff's requests for reasonable accommodation dated October 19, 1990, December 16, 1991, March 4, 1992, June 20, 1997, November 1998, and February 2000 and the medical documentation Defendants requested," and Plaintiff's military records. *See* Second Am. Compl. ¶ 1.B. Mr. Gard alleges that this claim, among others, arises out of a "November 24, 2006, email, Exhibit 445 wherein Defendants denied in writing that Plaintiff had requested and Defendants had approved reasonable accommodation for Plaintiff." *Id.* ¶ 17. Mr. Gard reads this email as an admission that Defendants did not secure his medical records. *Id.*

However, Mr. Gard expressed his belief that his medical records had been destroyed in a declaration to the U.S. Office of Special Counsel dated February 25, 2005. *See* Defs.' Mem., Ex. 1 (Letter from Gard to Angela Rush, Complaints Examiner) at 15. Specifically, he stated that

he believed that the agency intended to deny knowledge of his handicap, and "[t]hat means that: a) my personnel file has been laundered, and b) evidence has been destroyed because my personnel file did contain information that I am handicapped and did make a request for reasonable accommodation. . . . [My supervisor] received specific information from me in 2004 concerning my handicap and reasonable accommodation." *Id.*  Additionally, in answers to interrogatories dated in September 28, 2005, he stated that evidence of his disabilities and the reasonable accommodations provided "would still be documented and in my agency records if agency officials had not destroyed my agency records. . . . Agency officials have stated/admitted that they are unable to locate my agency records." *Id.*, Ex. 2 (Mr. Gard's Interrogatory Response in the Complaint of John Gard and Margaret Spellings) at 5, 6, 10, & 16.  He also stated,

> Agency officials **do not have any justification to request my PTSD medical records as I have voluntarily provided them with everything they need and have a right to know**.  The fact that agency officials [intentionally] lost misplaced or destroyed the medical documentation I provided them, does not mean they are not authorized through this EEO claim(s) to request a total blanket release of all my medical records . . . .

*Id.*, Ex. 2 at 15 (emphasis and alterations in original).

Mr. Gard does not allege that he submitted any medical or other records after 2004 and, in fact, emails between Mr. Gard and Defendants during the fall of 2006 indicate that he refused to provide Defendants with any further documentation.  *See* Second Am. Compl., Ex. 1 (Exs. 442-445).  Therefore, his Privacy Act claim must relate to the same failure to maintain or destruction of records of which he complained in February and September of 2005.  Mr. Gard did not file his Complaint here until December 21, 2007, which is more than two years after he became aware of the alleged violation.  Therefore, his Privacy Act claim is barred by the statute of limitations and

Counts I-III must be dismissed.

### C. Rehabilitation Act

Mr. Gard's claim of discrimination under the Rehabilitation Act also must be dismissed. On September 20, 2006, Defendants told Mr. Gard via email that they did not have record of any prior "written approval for a reasonable accommodation request" and that if he sought to request a reasonable accommodation he would have to provide "more recent medical documentation (i.e., last three months)." Second Am. Compl., Ex. 1 (Ex. 443-1: Sept. 20, 2006 email from Stracke to Gard). Mr. Gard responded that "[t]he medical records agency officials requested were submitted to the agency and the agency's failure to safeguard and maintain those records is a violation of the Privacy Act and the Rehabilitation Act." *Id.*, Ex. 1 (Ex. 444-1: Oct. 3, 2006 email from Gard to Stracke). Mr. Gard did not submit the updated medical information requested. Defendants therefore denied his request for a reasonable accommodation on November 24, 2006. *See id.*, Ex. 1 (Ex 445: Nov. 24, 2006 email from Stracke to Gard) ("Given that your alleged disability and/or need for accommodation are not obvious to me or your supervisor, and we are unable to locate any record of any agency determination that you are or have ever been a qualified individual with a disability, we are unable to consider your request further without current medical documentation.").

An employee seeking an accommodation for a disability must comply with an employer's reasonable request for medical documentation. *See Bramwell v. Blakey*, Civ. No. 04-927, 2006 U.S. Dist. LEXIS 32728, *18 (D.D.C. May 24, 2006) ("An employer is not required to provide an accommodation prior to receiving medical documentation that substantiates the employee's need for accommodation."); *Carroll v. England*, 321 F. Supp. 2d 58, 69-70 (D.D.C.

2004) (finding that plaintiff could not prove failure to reasonably accommodate where she declined to provide up-to-date medical documentation upon employer's request).  Mr. Gard's refusal to provide updated medical documentation precludes his claim that Defendants discriminated against him when they failed to accommodate his alleged disabilities.

Mr. Gard's allegation of retaliation under the Rehabilitation Act survives to the extent he alleges that "reasonable accommodation problems increased further after a) Plaintiff had filed a formal handicap refusal to continue reasonable accommodation complaint against Defendants on March 14, 2005."  Second Am. Compl. ¶ 50.  Treating the facts alleged in the Complaint as true, as the Court must do in considering a motion to dismiss pursuant to Rule 12(b)(6), Mr. Gard has stated a claim for retaliation, despite his failure to comply with Defendants' reasonable request for medical documentation.  Mr. Gard could prevail on his retaliation claim if he is able to offer affirmative evidence that it was his filing a discrimination complaint, rather than his refusal to provide medical records, that caused Defendants to deny him a reasonable accommodation.[4]  *See*, *e.g., Zeigler v. Potter*, 641 F. Supp. 2d 25, 29 (D.D.C. 2009) (noting that "a plaintiff's good-faith request for accommodations is protected activity and that, therefore, the denial of such accommodations can be retaliatory even if it is ultimately determined plaintiff is not disabled").

### D. Plaintiff's Motion for Summary Judgment

In response to Defendants' motion to dismiss, Mr. Gard moved for summary judgment.  However, Mr. Gard failed to provide a statement of undisputed material facts or explain

---

[4] Mr. Gard also alleges that Defendants refused to provide him with a reasonable accommodation because he disclosed fraud within the Department.  While arguably protected by other statutes, this activity is not protected by the Rehabilitation Act and therefore may not be considered as part of his remaining claim.

why he is entitled to judgment as a matter of law. As explained above, however, Mr. Gard's claim under the Privacy Act fails as a matter of law and he fails to state a claim of discrimination under the Rehabilitation Act. No alleged factual dispute can alter that. With respect to his retaliation claim, there is a factual dispute regarding Defendants' motive for denying Mr. Gard a reasonable accommodation. Accordingly, his motion for summary judgment must be denied.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss [Dkt. # 32] will be granted in part and denied in part. Plaintiff's motion for summary judgment [Dkt. # 40] will be denied. A memorializing order accompanies this memorandum opinion.


Date:  March 5, 2009                                   /s/
                                                       ROSEMARY M. COLLYER
                                                       United States District Judge